IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| PIONEERRX, LLC | ) | CIVIL ACTION NO.: 5:23-cv-00902 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE |
| | ) | |
| ROMAN HEALTH VENTURES, INC. | ) | |
| | ) | |
| Defendants | ) | MAGISTRATE JUDGE |
| | ) | |
| | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff PioneerRx LLC ("PioneerRx" or "Plaintiff") alleges as follows against Defendant Roman Health Ventures, Inc. ("Roman" or "Defendant"). The allegations herein are made on personal knowledge as to PioneerRx with respect to its own actions, and upon information and belief as to all other matters.

## INTRODUCTION

1.       PioneerRx is a leading provider of cutting-edge software systems that help independent pharmacies manage their workflow, provide better service, and save costs. PioneerRx has invested decades and millions of dollars into research and development in order to provide the market's leading pharmacy software systems and to achieve the highest customer satisfaction across the industry.

2.       PioneerRx provides customers with access to its proprietary pharmacy management software (the "Software"), which is registered with the United States Copyright Office, as well as other support services pursuant to license agreements (the "System Agreement") whereby the customers obtain a license to PioneerRx's products in exchange for a

1

monthly fee. To access and use the Software, customers must abide by the terms and conditions of the System Agreement, which, among other things, limits the scope of use of the Software and requires customers to keep strictly confidential PioneerRx's technical and business information that the customers learn through access to the Software and related service products. Customers also agree that they will not use the access they have been provided to copy, reverse engineer, or recreate the Software that PioneerRx has spent decades and tens of millions of dollars to develop.

3.      Defendant Roman, through an operating division known as Ro Pharmacy, is a former PioneerRx customer who voluntarily agreed to abide by these terms and, for years thereafter, enjoyed access to PioneerRx's innovations and technical achievements. Unbeknownst to PioneerRx, from the time Ro Pharmacy (on behalf of, and as a division of, Roman) executed the System Agreement, it was engaged in an illicit scheme to violate that agreement, violate PioneerRx's exclusive copyright rights in the Software, steal PioneerRx's confidential information, and misappropriate PioneerRx's trade secrets for the express purpose of creating, developing, modifying, and/or enhancing its own, competing in-house pharmacy software system, by unlawfully cloning and replicating PioneerRx's product features, innovations, and business model, thereby causing PioneerRx substantial harm.

4.      Roman's bad faith breach of contract, infringement of PioneerRx's copyright rights, and illicit misappropriation and theft of trade secrets and confidential information has left PioneerRx with no choice but to file this lawsuit seeking injunctive relief and recovery of damages for the harm that has been caused by this illegal conduct.

## THE PARTIES

5.      PioneerRx is a Delaware limited liability company with its principal business address located at 920 Pierremont Road, Suite 300, Shreveport, Louisiana 71106.

6.      Roman is a Delaware corporation with its principal business address located at 116 W 23rd Street, Floor 4, New York, NY 10011.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction for the copyright infringement claim under 28 U.S.C. § 1331, 17 U.S.C. § 501(a), and under the trade secret laws of the United States, 18 U.S.C. §§ 1836 and 1839.  This Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367(a) because the federal and state law claims derive from a common nucleus of operative facts.

8.      This Court has personal jurisdiction over the Defendant. Personal jurisdiction exists generally over the Defendant because it (directly and/or through its subsidiaries, divisions, groups or distributors) has sufficient minimum contacts with the Western District of Louisiana as a result of substantial business conducted within the State of Louisiana, including the operation of a telehealth services business targeting customers in this District and the operation of  an interactive website within this District through which Defendant's prospective customers residing in this District can receive health-related assessments and order medications provided by Defendant.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant transacts business in this District and is subject to personal jurisdiction in this district. Venue is also proper pursuant to the mandatory venue provision in the System Agreement executed by Defendant (as further defined below) providing that "[a]ny conflict, litigation, arbitration or resolution of any dispute related to or arising from this Agreement or the rights and duties of the parties shall be construed exclusively under the laws of Louisiana.  Venue for all such litigation or arbitration shall be exclusively in Shreveport, Louisiana."

## ADDITIONAL FACTUAL ALLEGATIONS

**A.    PioneerRx develops the Software, which is registered with the United States Copyright Office.**

10.    PioneerRx is an award-winning software company that develops and provides cutting-edge pharmacy management software, technology, and support products, designed to help improve the operations of independent pharmacies. This includes the Software, which is PioneerRx's flagship product.

11.    PioneerRx exclusively owns the copyright in and to the Software, which was registered with the United States Copyright Office on March 25, 2010 and assigned Registration Number TX 7-386-764.

12.    The Software utilizes copyrightable code, documentation, specifications, and other materials which form PioneerRx's pharmacy management platform and help independent pharmacies improve and manage their intake, workflow, and delivery. The Software also improves the patient customer experience, for example, by providing ways for the customers to communicate with the pharmacy, access their prescription information, and request refills.

13.    Along the way to helping thousands of pharmacies reduce their costs and provide better service, PioneerRx has become the most chosen installation pharmacy system with the highest customer satisfaction.

14.    PioneerRx's award-winning Software is the result of decades and hundreds of thousands of hours in research and development, costing tens of millions of dollars. This research and development is done by PioneerRx employees. PioneerRx owns all the work product that is developed, including the Software.

15.    PioneerRx's research and development has also generated extremely valuable, confidential, and proprietary business and technical information (PioneerRx's "Confidential

4

Information"), including PioneerRx's trade secrets, which are not available to the public. For example, PioneerRx has developed:

- **Pharmacy Management Software:** a software program that is created from source code, databases, servers, and a user-interface for performing tasks such as managing pharmacy workflow, point of sale operations, and managing patient and prescription information;

- **Workflows for Pharmacy Management:** a customizable series of steps, options, and strategies incorporated into the Software for pharmacies to help manage their order of operations, level of automation, inventory procedures, and patient and prescription organization, among other things;

- **Data Structures:** computer data architecture that is optimized to store and quickly access data needed for workflows and other pharmacy management, such as patient and prescription information;

- **Database Procedures**: server based code for accessing, manipulating, organizing, and creating data, data structures, creating reports, and assisting computerized workflows; and

- **PioneerRx's manuals, documentation, user guides, testing procedures, and other materials:** text, graphical, and video materials intended to help educate customers on how to operate, customize, and test the PioneerRx Software, data structures, and database procedures.

16.     The forgoing Confidential Information is further described with additional detail in PioneerRx's technical documentation.

17.     PioneerRx's Confidential Information, including trade secrets, contributes to an improved customer experience compared to the pharmacy management software of PioneerRx's competitors.  PioneerRx derives a significant competitive advantage by keeping its Confidential Information, including trade secrets, unknown to the public. By doing so, PioneerRx is able to provide features, functionality, and performance for its Software that its competitors do not have, thus making the PioneerRx Software more attractive to customers.

**B.    PioneerRx protects its Confidential Information.**

18.     Due to the valuable nature of the Confidential Information, PioneerRx goes to great lengths to protect it from public disclosure. Among these efforts includes having its

employees who have access to the Confidential Information sign confidentiality agreements. PioneerRx has also restricted physical and digital access to authorized users with valid credentials.  Access is also strictly limited to legitimate business purposes, and only those users who need access to Pioneer's Confidential Information are given access.

19.     Other measures PioneerRx has taken to protect its Confidential Information include, but are not limited to computer and server passwords, security access cards, confidentiality agreements, letters notifying departing employees to return all property belonging to PioneerRx, distribution of information on a need-to-know basis, and non-compete and non-solicitation agreements with its high-level employees.

20.     To the extent that it is necessary to disclose Confidential Information to customers for legitimate business purposes, PioneerRx has entered into System Agreements that include confidentiality provisions to protect disclosure of such information to the public, as further explained below.

21.     PioneerRx is the sole owner of its Confidential Information, including its Software. Pursuant to System Agreements with various customers, PioneerRx grants customers a license to use the Software for limited purposes, and subject to numerous conditions and restrictions.

**C.     PioneerRx enters into a System Agreement with Roman.**

22.     Roman is a telehealth company that provides direct-to-patient healthcare, including pharmacy services. It operates its pharmacy division under the brand "Ro Pharmacy," which operates as a stand-alone pharmacy business within Roman's broader telehealth platform.

23.     On August 26, 2020, PioneerRx (the "Vendor") entered into a System Agreement with Ro Pharmacy (on behalf of, and as a division of, Defendant Roman (the

"Customer"). *See* Ex. 1. The System Agreement is a valid and enforceable contract, and PioneerRx has complied with all of its obligations thereunder.

24.     The System Agreement granted Ro Pharmacy a revocable, non-exclusive, non-assignable, and non-transferable object code license to use the Software "only for [Ro Pharmacy's] internal business purposes and only on [Ro Pharmacy's] data in the United States." Ex. 1 at § I(A). As such, access to the Software was only permitted to those persons working within the "Ro Pharmacy" division of Roman who had a legitimate business need to access it, and who operated out of a dedicated physical location in New York (as opposed to those persons working on Roman's broader telehealth platform).

25.     Ro Pharmacy's license was further conditioned on a number of additional confidentiality provisions and restrictions, which were designed to limit access to, and use of, and thereby protect, PioneerRx's Confidential Information and Software. For example, Ro Pharmacy agreed to following provisions of the System Agreement:

- "The Customer shall not, nor shall it permit others to, recreate, copy, screen scrape, duplicate, modify, translate, reverse engineer, decompile, rent, sublicense, grant rights to, disassemble, create derivative works based upon, convey, transfer, disclose or otherwise make available to any third person or entity, the Software, Documentation, or any physical embodiment thereof. Nor shall customer remove or change any product identification, proprietary, copyright or other notices contained in the Software or Documentation." *Id*. at § I(C).

- "The Software shall only be operated on a Vendor-owned computer server ("Vendor Hardware"). The Software and rented Vendor Hardware shall only be installed and used at the locations listed in LICENSED LOCATIONS on the Cover Sheet." *Id.* at § I(D). The only licensed location was Ro Pharmacy's headquarters in New York. *Id.* at Cover Sheet.

- "In no event shall the Customer use more than one production copy of the Software per Licensed Location at any time. Transfer of the Software in contravention of the terms and conditions of this paragraph may result in termination of the license, in Vendor's sole discretion." *Id.* at § I(E).

- "Client Access Licenses (CALs) are mandatory for each Customer device accessing Vendor's Hardware. Customer shall maintain enough CALs to meet this requirement. Vendor reserves the right to periodically count the number of Customer's devices accessing the Vendor hardware. Vendor further reserves the right to require Customer

to obtain additional licenses if necessary, to satisfy the requirement." *Id.* at § I(F).

- "The Customer shall limit the persons who have access to the Software to those persons who use said Software in the normal business operations of the Customer. THE CUSTOMER SHALL NOT KNOWINGLY PROVIDE ACCESS OF THE SOFTWARE TO ANY PERSON OR ENTITY WHO IS EMPLOYED BY OR HAS A CONTRACTUAL RELATIONSHIP WITH ANY COMPETITOR OF VENDOR." *Id.* at § III(A).

- "During the term of this Agreement and for a period of two (2) years after its termination or expiration (the "Non-development Period") Customer shall not, and shall not assist or engage others to, create or contribute in any way to the creation or development of pharmacy management software for use by Customer or others, which include, but are not necessarily limited to, any of the following features or functionality:
  1. Submits an electronic claim for payment or reimbursement
  2. Accepts or transfers electronic prescriptions
  3. Checks patient condition, allergy and drug interaction" *Id.*

- "The CUSTOMER agrees to take all reasonable precautions to secure and protect all SOFTWARE in a manner consistent with the VENDOR's rights as herein stated and to take such reasonable action as is necessary to satisfy the VENDOR that said SOFTWARE is protected." *Id.* at § III(C).

- "All material and information provided by one party to the other relating to the business, policies, procedures, customs and forms of that party or any of its affiliates, including information previously divulged or delivered relating to the aforementioned subject matter is hereby designated as and considered to be Proprietary Information." *Id.* at § III(D).

- "Each party shall maintain the confidentiality of the other's Proprietary Information and will not disclose such Proprietary Information without the prior written consent of the other party. In addition, neither party shall use the other party's Proprietary Information except as contemplated herein." *Id.*

26.     The above contractual provisions were knowingly and consciously entered into by Roman.

**D.     Defendant engages in an illicit scheme to infringe PioneerRx's copyrighted Software, steal PioneerRx's Confidential Information and violate the Systems Agreement.**

27.     On information and belief, Roman engaged in an illicit scheme to materially breach and undermine the very purpose of the Systems Agreement in order to infringe PioneerRx's copyrighted Software and to steal PioneerRx's Confidential Information, including trade secrets and other business information, so that it could develop and enhance its own

unlawful competing pharmacy management system within its broader telehealth platform.

28.     This scheme included coordination between its division, Ro Pharmacy, and persons who were not authorized to use or access the Software or other Confidential Information, including third-party software developers, for the purposes of creating and using a competing pharmacy management software system and/or for purposes of modifying existing pharmacy management that appropriated Confidential Information and other protectable aspects of the Software, in blatant violation of the System Agreement and PioneerRx's copyright rights in the Software.

29.     Roman, through Ro Pharmacy, and the unauthorized persons working with Roman continually accessed PioneerRx's Software and databases for improper purposes, including to discern confidential details regarding the software code, specifications, documentation, operation, methodology, strategies, and data structures underlying the PioneerRx Software. Roman and the unauthorized persons working with Roman needed to continually access the PioneerRx Software in order to understand information that would help them create and/or modify a competing pharmacy software system because this information is not immediately discernable without studying and/or continually using PioneerRx's Software.

30.     Specific instances of Roman's breaches of the System Agreement and unauthorized use of the Software and other Confidential Information include:

- On or about January 25, 2022, an employee of Ro Pharmacy, Madeline Kaup ("Ms. Kaup"), reached out to PioneerRx support seeking copies of screenshots and attachment of how PioneerRx's proprietary drug utilization review (DUR) systems functions. As PioneerRx later found out, Ms. Kaup was not seeking copies of screenshots and attachments for legitimate purposes. Rather, Ms. Kaup's request was made in furtherance of Roman's scheme to unlawfully incorporate elements of PioneerRx's Software and Confidential Information into its telehealth platform to develop and/or modify competing pharmacy software.

- On or about April 13, 2022, Ryan Zeidan ("Mr. Zeidan"), Executive Assistant Director of Support at PioneerRx, spoke with Ms. Kaup regarding upgrades to the service before it could be brought back online. Ms. Kaup revealed to Mr. Zeidan that

Ro Pharmacy had yet to even use the Software as contemplated by the System Agreement, despite entering into the System Agreement almost two years earlier. She also stated that Stephen Buck, a former VP at Ro Pharmacy (and the individual who executed the System Agreement), was working with a developer in Poland, and that Ro Pharmacy was going to send PioneerRx's server containing the Software to him, despite Ro Pharmacy's obligation to make the server accessible only at its headquarters in New York, Ex. 1 at § I(D) and despite Ro Pharmacy's obligations to limit and control access to the Software, *id.* at §§ I(E), I(F), III(A). In other words, Ro Pharmacy had no legitimate business purpose for entering into the System Agreement, and instead, was using it as a pretext to gain access to PioneerRx's Software and Confidential Information, so that it could appropriate the information contained therein and unfairly compete with PioneerRx.

- On or about the same day, April 13, 2022, a third-party vendor at the Independent Pharmacy Cooperative (IPC) Conference in Coronado, California indicated to Jeff Key, the President of PioneerRx, that it was doing work for Ro Pharmacy and that Roman had produced its own "proprietary" competing pharmacy management system which utilized numerous features of PioneerRx's Software (in blatant violation of Sections I(C) and III(A) of the System Agreement, Ex. 1 at §§ I(C), III(A)) and that Ro Pharmacy's management system was handling about 25 Million prescriptions per year. This representation further confirmed Ro Pharmacy's illicit intent for entering into the System Agreement.

- Things came to a head on or about April 26, 2022, when Mark Bivins, VP of Sales at PioneerRx, spoke with the Director of Pharmacy Operations for Ro Pharmacy, Denise Foley (Ms. Foley"). Ms. Foley further revealed Roman's illicit scheme, demonstrating that Ro Pharmacy was conducting itself as if it was itself the owner of the Software and Confidential Information, when its rights thereto were in fact strictly limited. Ms. Foley stated that the leadership of Ro Pharmacy built their own pharmacy management software after licensing the PioneerRx system, rather than using PioneerRx's pharmacy management software. Ms. Foley also stated that the server referred to by Ms. Kaup two weeks earlier was going to be shipped to Poland, was then located in a New York City pharmacy and was being moved to be brought online. She went on to reveal that Ro Pharmacy's development team starts up the PioneerRx system to show Ro Pharmacy's engineering team in Poland key aspects of how the PioneerRx system works with data entry and DUR functions in order to program functionality, to further aid in the development of Ro Pharmacy's competing pharmacy management system. Oblivious to the clear violations of PioneerRx's rights, Ms. Foley also conveyed that they would like to keep the PioneerRx System Agreement active as they may still need it if they decide to start submitting claims to insurance companies. Finally, Ms. Foley asked for screen shots of the PioneerRx system Documentation, which PioneerRx alleges was for the purpose of providing the Documentation to Ro Pharmacy's developers to further enhance its pharmacy management system.

31.     Though PioneerRx terminated the System Agreement with Ro Pharmacy and put Ro Pharmacy on notice of its material breaches thereto, Ro Pharmacy continues to unlawfully exploit PioneerRx's Software and Confidential Information for its own financial gain, to PioneerRx's significant detriment.

## COUNT I

### Copyright Infringement Under 17 U.S.C. § 501

32.     PioneerRx incorporates and re-alleges each and every allegation above as if fully set forth herein.

33.     PioneerRx is, and at all relevant times was, the owner of the Software which, as alleged above, was registered with the United States Copyright Office prior to the execution of the System Agreement.

34.     Roman used the Software in a manner not authorized by the System Agreement and well outside the limited grant of rights under the System Agreement in order to unlawfully incorporate protectable elements of the Software into its own competing pharmacy management software. Such conduct violates PioneerRx's exclusive rights to reproduce, adapt, distribute, and publicly display the Software, thereby constituting direct copyright infringement in violation of 17 U.S.C. § 501 *et seq*.

35.     Roman furthermore knew of and materially contributed to, enabled, and induced the direct infringement of other individuals, including by willfully providing access to individuals that had no authorization to access the Software. Roman had the right and ability to supervise and control the infringing activities of such individuals, but declined to stop it because it derived a direct and substantial financial benefit from such infringement. Such conduct by Roman constitutes contributory and vicarious copyright infringement in violation of 17 U.S.C. § 501 *et seq*.

36.     Roman's acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to PioneerRx's rights.

37.     As a direct and proximate result of Roman's infringement, PioneerRx is entitled to statutory damages in an amount of up to $150,000 with respect to each work infringed pursuant to 17 U.S.C. § 504(c), or at PioneerRx's election, actual damages for Roman's infringement of its copyright in the Software and Roman's profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b) in an amount to be proven at trial. PioneerRx is also entitled to its costs of suit and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

38.     Roman's conduct is causing, and unless enjoined by this Court, will continue to cause, PioneerRx great and irreparable injury that cannot fully be compensated for or measured in money, such that PioneerRx has no adequate remedy at law. As such, PioneerRx is also entitled to temporary and permanent injunctive relief enjoining Roman and any individuals or entities acting in concert with Roman or on Roman's behalf, from further infringing PioneerRx's copyrights, including an injunction precluding Roman from using any in-house or third-party pharmacy management software that incorporates any protectable aspects of the Software and/or Confidential Information, and which was obtained or derived through unauthorized access to the Software and/or other Confidential Information.

### COUNT II

**Trade Secret Misappropriation Under the Defend Trade Secrets**
**Act (18 U.S.C. §§ 1836(b), 1839 *et seq.*) (against all Defendants)**

39.     PioneerRx incorporates and re-alleges each and every allegation above as if fully set forth herein.

40.     PioneerRx is the owner of certain valuable trade secrets contained in and relating to the Software, including as described herein. These trade secrets are confidential and propriety information, including financial, business, and technical information, such as compilations, program devices, methods, techniques, processes, procedures, programs, and codes, which

constitute trade secrets. These trade secrets are related to PioneerRx's products and services that are used in or intended for use in interstate and foreign commerce. As stated above, PioneerRx sells its products throughout the United States. For example, PioneerRx's pharmacy software system and solutions are sold and used throughout the United States.

41.     These confidential and proprietary trade secrets are of substantial economic value and have conferred a competitive advantage on PioneerRx. They derive independent economic value from not being generally known, and not being readily ascertainable through proper means by others because such information is extremely valuable to PioneerRx, crucial to the operation of PioneerRx's business, and if available to others, would enable them to compete with PioneerRx to PioneerRx's detriment.

42.     PioneerRx has taken reasonable steps to maintain the secrecy of its trade secrets, including by requiring confidentiality and/or nondisclosure agreements to be signed by any party granted access to PioneerRx's trade secrets. Such information cannot be properly acquired or duplicated because of the limited number of individuals who can access the information and the contractual limitations imposed on such individuals.

43.     Roman gained access to PioneerRx's trade secrets during the course of the System Agreement it entered into with PioneerRx and has since improperly used and disclosed those PioneerRx trade secrets, including by incorporating them into a competing pharmacy management software system or systems that Roman uses for its benefit.

44.     Roman has misappropriated PioneerRx's trade secrets by acquiring, using, and/or disclosing the information described above for purposes of creating or modifying competing pharmacy management software that comprises, embodies, and/or incorporates the trade secrets described herein.

13

45.      Roman willfully and maliciously misappropriated PioneerRx's trade secrets in order to gain economic value from that information.

46.      As a direct and proximate result of Defendants' current and continued misappropriation of PioneerRx's trade secrets, PioneerRx will suffer imminent and irreparable harm.

47.      Unless enjoined by this Court, Defendants' acts of misappropriation will continue and PioneerRx will continue to suffer irreparable harm.

48.      PioneerRx has no adequate remedy at law.

## COUNT III

### Trade Secret Misappropriation Under Louisiana Uniform Trade Secret Act
### (LA Rev Stat § 51:1431 *et seq.*)

49.      PioneerRx incorporates and re-alleges each and every allegation above as if fully set forth herein.

50.      PioneerRx is the owner of certain valuable trade secrets contained in and relating to the Software, including as described herein.  These trade secrets are confidential and propriety information, including financial, business, and technical information, such as compilations, program devices, methods, techniques, processes, procedures, programs, and codes, which constitute trade secrets.  These trade secrets are related to PioneerRx's products and services that are used in or intended for use in interstate and foreign commerce.  As stated above, PioneerRx licenses its products throughout the United States. For example, PioneerRx's pharmacy software system and solutions are licensed and used throughout the United States.

51.      These confidential and proprietary trade secrets are of substantial economic value and have conferred a competitive advantage on PioneerRx. They derive independent economic value from not being generally known to, and not being readily ascertainable through

proper means by others because such information is extremely valuable to PioneerRx, crucial to the operation of PioneerRx's business, and if available to others, would enable them to compete with PioneerRx to PioneerRx's detriment.

52.     PioneerRx has taken reasonable steps to maintain the secrecy of its trade secrets, including by requiring confidentiality and/or nondisclosure agreements to be signed by any party granted access to PioneerRx's trade secrets.  Such information cannot be properly acquired or duplicated because of the limited number of individuals who can access the information and the contractual limitations imposed on such individuals.

53.     Roman gained access to PioneerRx's trade secrets during the course of the System Agreement it entered into with PioneerRx and has since improperly used and disclosed those PioneerRx trade secrets, including by incorporating them into a competing pharmacy management software system or systems that Roman uses for its benefit.

54.     Roman willfully and maliciously misappropriated PioneerRx's trade secrets in order to gain economic value from that information.

55.     As a direct and proximate result of Roman's current and continued misappropriation of PioneerRx's trade secrets, PioneerRx will suffer imminent and irreparable harm.

56.     Unless enjoined by this Court, Defendants' acts of misappropriation will continue and PioneerRx will continue to suffer irreparable harm.

57.     PioneerRx has no adequate remedy at law.

## COUNT IV

### Bad Faith Breach of Contract

58.     PioneerRx incorporates and re-alleges each and every allegation above as if fully set forth herein.

59.     The actions of Roman, as set forth herein, constitute a breach of contract.

60.     PioneerRx satisfied all relevant obligations under the System Agreement it entered into with Roman.

61.     Nonetheless, Roman incurably breached multiple provisions of the System Agreements, including *inter alia* Section I(A), I(C)-(F), III(A), III(C) and III(D) of Exhibit 1.

62.     For example, pursuant to the System Agreement, Roman was only permitted to use the Software "for Customer's internal business purposes and only on the Customer's data in the United States."  Ex. 1 at § I(A).

63.     Further, Roman had an obligation not to, and not to permit any other person to, "recreate, copy, screen scrape, duplicate, modify, translate, reverse engineer, decompile, rent, sublicense, grant rights to, disassemble, create derivative works based upon, convey, transfer, disclose or otherwise make available to any third person or entity, the Software, Documentation, or any physical embodiment thereof. Nor shall customer remove or change any product identification, proprietary, copyright or other notices contained in the Software or Documentation."  *Id*. at § I(C).

64.     Roman also had the obligation to "limit the persons who have access to the Software to those persons who use said Software in the normal business operations of the Customer. THE CUSTOMER SHALL NOT KNOWINGLY PROVIDE ACCESS TO THE

SOFTWARE TO ANY PERSON OR ENTITY WHO IS EMPLOYED BY OR WORKS AS A CONTRACTOR FOR ANY COMPETITOR OF VENDOR." *Id*. at § III(A).

65.     By allowing unauthorized persons to access the Software and other Confidential Information for the purposes of using Roman's Confidential Information to create and/or modify and enhance a competing pharmacy management software system, Roman directly breached the above-cited provisions of the System Agreement.

66.     Moreover, Roman breached the implied covenant of good faith and fair dealing, which Louisiana recognizes in every contract. Roman breached this implied covenant by its intentional and bad faith breaches of the express terms as alleged herein, wholly outside the reasonable expectations of the parties as set forth in the System Agreement, in order to undermine its very purpose and steal the fruits of PioneerRx's significant investments.

67.     When Roman entered the System Agreement with PioneerRx in in 2020, Roman intended to breach the express terms, conditions, and obligations set forth in the System Agreement. Roman never had a legitimate need for the Software as contemplated under the System Agreement, so it instead used the Software Agreement as a guise to gain access to PioneerRx's Software and Confidential Information, so that it could be copied, reverse engineered, and/or recreated, to be used for Roman's benefit. Roman's failure to perform its obligations under the System Agreement were therefore intentional and malicious.

68.     Pursuant to article 1997 of the Louisiana Civil Code, an obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of Roman's failure to perform.

17

69.     As a result of Roman's failure to perform under the System Agreement, PioneerRx has been required to obtain counsel to bring this litigation and is entitled to its reasonable attorneys' fees and costs incurred as a result. *See* Ex. 1 § XIV(J).

70.     As a direct and proximate result of Roman's wrongful conduct, PioneerRx has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Roman's actions will cause further irreparable injury to PioneerRx.

71.     PioneerRx is entitled to injunctive relief enjoining Roman, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further use of PioneerRx's Software and Confidential Information including the use of any competing pharmacy management software that incorporates any of Roman's Confidential Information or features and functions Roman obtained through access to the Software.

## COUNT V
### Breach of Contract

72.     PioneerRx incorporates and re-alleges each and every allegation above as if fully set forth herein.

73.     The actions of Roman, as set forth herein, constitute a breach of contract.

74.     PioneerRx satisfied all relevant obligations under the System Agreement it entered into with Roman.

75.     Nonetheless, Roman incurably breached multiple provisions of the System Agreements, including *inter alia* I(A), I(C)-(F), III(A), III(C) and III(D) of Exhibit 1.

76.     As alleged above, pursuant to the System Agreement, Roman was only permitted to use the Software "for Customer's internal business purposes and only on the Customer's data in the United States." Ex. 1 at § I(A).

77.     Further, Roman had an obligation not to, and not to permit any other person to, "recreate, copy, screen scrape, duplicate, modify, translate, reverse engineer, decompile, rent, sublicense, grant rights to, disassemble, create derivative works based upon, convey, transfer, disclose or otherwise make available to any third person or entity, the Software, Documentation, or any physical embodiment thereof. Nor shall customer remove or change any product identification, proprietary, copyright or other notices contained in the Software or Documentation." *Id*. at § I(C).

78.     Roman also had the obligation to "limit the persons who have access to the Software to those persons who use said Software in the normal business operations of the Customer. THE CUSTOMER SHALL NOT KNOWINGLY PROVIDE ACCESS TO THE SOFTWARE TO ANY PERSON OR ENTITY WHO IS EMPLOYED BY OR WORKS AS A CONTRACTOR FOR ANY COMPETITOR OF VENDOR." *Id*. at § III(A).

79.     By allowing unauthorized persons to access the Software and other Confidential Information for the purposes of using PioneerRx's Confidential Information to create and/or modify and enhance a competing pharmacy management software system, Roman directly breached the above-cited provisions of the System Agreement.

80.     Moreover, Roman breached the implied covenant of good faith and fair dealing, which Louisiana recognizes in every contract. Roman breached this implied covenant by its intentional and bad faith breaches of the express terms as alleged herein, wholly outside the

reasonable expectations of the parties as set forth in the System Agreement, in order to undermine its very purpose and steal the fruits of PioneerRx's significant investments.

81.     The System Agreement provides:

"B. If Customer develops pharmacy management software that includes any of the above features or functionality within the Non-development Period ("Customer Pharmacy Management System") Customer shall pay a royalty of $0.10 per transaction to PioneerRx for 20 years, beginning the date the first transaction is processed by any person or entity using the Customer Pharmacy Management System. The royalty shall be payable monthly. Vendor reserves the right to audit and if the royalty payments are found to be underpaid by 5% or more, the Customer shall pay the cost of the audit." Ex. 1 at § III(B).

82.     On information and belief, Roman processed at least 25 million prescriptions through a Customer Pharmacy Management System from and after the Effective Date of the System Agreement.

83.     As a result of Roman's breaches of the System Agreement PioneerRx has suffered damages in an amount to be proved at trial in excess of $2,500,000.

84.     As a result of Roman's breaches of the System Agreement, PioneerRx has been required to obtain counsel to bring this litigation and is entitled to its reasonable attorneys' fees and costs incurred as a result. *See Ex. 1 § XIV(J).*

## COUNT VI

### Violation of Louisiana Unfair Trade Practices and Consumer Protection Law (LA Rev State § 51:1401, 1405, 1427 *et seq.*)

85.     PioneerRx incorporates and re-alleges each and every allegation above as if fully set forth herein.

86.     Roman engaged in deception in order to gain access to PioneerRx's servers for improper and unfair purposes, including to create a copied version of PioneerRx's software.

87.     PioneerRx was the sole owner of the Software and Confidential Information which was its propriety information. *See Ex. 1 §§ II, III.*

88.     The confidential and proprietary nature of the Software was clearly designated in the System Agreements. *See* Ex. 1 §§ II, III.

89.     Roman was granted a limited license to use the Software pursuant to the System Agreement, which limited the use and access to the Software to authorized persons working within Roman's Ro Pharmacy division. *See* Ex. 1 Introductory Section and Cover Sheet identifying "Customer").

90.     Roman entered into the System Agreement with the intent to violate these provisions of the System Agreements and reverse engineer the Software in an effort to acquire, develop, modify or enhance its own pharmacy management software for use in commerce.

91.     Such action of reverse engineering the proprietary Software of PioneerRx in violation of the System Agreement in order to then compete with PioneerRx constitutes an unfair method of competition and unfair or deceptive trade act or practice.

92.     As a direct result of Roman's scheme to develop, modify or enhance its competing pharmacy software system, PioneerRx has lost revenues and customers due to Roman's unfair methods of competition and unfair or deceptive trade acts or practices and thus, suffered damages as a result.

93.     PioneerRx is entitled to an award of reasonable attorneys' fees and costs due to Roman's violations of the Louisiana Unfair Trade Practices Act. *See* La. R.S. 51:1409(A).

## **JURY DEMAND**

PioneerRx requests trial by jury as to all claims triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, PioneerRx respectfully requests that the Court:

1.      Enter judgment in favor of PioneerRx and against Roman with respect to each of the Counts above.

2.      Award a temporary restraining order, preliminary injunction, and/or permanent injunction prohibiting Roman from using or possessing PioneerRx's copyrights or trade secrets.

3.      Award a temporary restraining order, preliminary injunction, and/or a permanent injunction restraining and enjoining Roman from altering, destroying, or disposing of any evidence, in any form, relating to this action, including without limitation emails and paper and electronic documents, including current or archived electronic logs, metadata, and directories.

4.      Declare valid and enforceable the provisions of the System Agreement as between PioneerRx with Roman.

5.      Declare that Roman has no rights or privileges to use PioneerRx's copyrights, Confidential Information or trade secrets.

6.      Declare that Roman has willfully infringed copyrighted work(s) owned and/or controlled by PioneerRx in violation of the Copyright Act.

7.      Award PioneerRx restitution in an amount to be determined at trial.

8.      Award PioneerRx compensatory damages in an amount to be determined at trial, including without limitation, PioneerRx's lost revenues and profits, the loss of value to PioneerRx's information, unjust enrichment, and disgorgement of profits.

9.      Award PioneerRx statutory damages pursuant to 17 U.S.C. § 504(c), in an amount up to the maximum provided by law, arising from Roman's willful violations of PioneerRx's rights under the Copyright Act; or, at PioneerRx's election, PioneerRx's actual

damages pursuant to 17 U.S.C. § 504(b), including Roman's profits from the infringement.

10.  Award PioneerRx exemplary or punitive damages in an amount to be determined at trial.

11.  Award PioneerRx attorneys' fees and costs.

12.  Award pre-judgment and post-judgment interest at the applicable rate on any monetary award made part of the judgment against Roman.

13.  Award PioneerRx any such other relief as the Court deems appropriate.

Dated: July 10, 2023

By: */s/ Scott L. Zimmer*
Scott L. Zimmer (La. Bar No. 26151) KEAN MILLER LLP
333 Texas Street Suite 450
Shreveport, LA 71101
Tel: (318) 562-2700
Fax: (318) 562-2751
scott.zimmer@keanmiller.com

James R. Chastain, Jr. (La. Bar No. 19518)
KEAN MILLER LLP
400 Convention Street, Suite 700
Baton Rouge, LA 70802
Tel: (225) 387-0999
Fax: (225) 388-9133
sonny.chastain@keanmiller.com

Megan L. Reinkemeyer (La. Bar No. 32548)
KEAN MILLER LLP
711 Louisiana Street, Suite 1800
Houston, TX 77002
Tel: (713) 844-3000
Fax: (713) 844-3030
megan.reinkemeyer@keanmiller.com

Lawrence J. Hilton *(pro hac vice forthcoming)*
ONE LLP
23 Corporate Plaza Ste. 150-105
Newport Beach, CA 92660
Tel: (949) 502-2876
Fax: (949) 258-5081
lhilton@onellp.com

***ATTORNEYS FOR PIONEERRX, LLC***